STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

FILED

June 15, 2018

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **N.M., I.M., E.M.-1, K.G., and E.M.-2**

**No. 18-0148** (Wood County 17-JA-81, 82, 83, 84 and 85)

## MEMORANDUM DECISION

Petitioner Mother S.G., by counsel Robin S. Bonovitch, appeals the Circuit Court of Wood County's January 17, 2018, order terminating her parental rights to N.M., I.M., E.M.-1, K.G., and E.M.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jeffrey B. Reed, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent, denying her motion for a post-adjudicatory improvement period, and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 4, 2017, the DHHR filed an abuse and neglect petition alleging that E.M.-1 was sexually abused by her step-father and that petitioner knew of the sexual abuse and failed to protect E.M.-1, as well as the other children, from further sexual abuse.[2] The petition further alleged that petitioner emotionally abused her children by failing to believe E.M.-1's disclosures

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, they will be referred to as E.M.-1 and E.M.-2, respectively throughout this memorandum decision. Further, this Court recognizes that N.M. has reached the age of majority (eighteen) and is no longer under this Court's jurisdiction for abuse and neglect proceedings. Thus, this Court will decide the issues only as they relate to the remaining children.

[2]N.M., E.M.-1, I.M., and E.M.-2 are petitioner's children with father, D.F. Petitioner and D.G. had one child together, K.G.

1

concerning the sexual abuse and by calling E.M.-1 a "liar" and a "bitch" and stating that E.M.-1 would "ruin their family" in the presence of the other children.

On June 21, 2017, the circuit court held an adjudicatory hearing. When asked if she believed that E.M.-1 was sexually abused by the step-father, petitioner responded, "I can't answer that question." E.M.-1's videotaped interview from the Child Advocacy Center ("CAC") was admitted into evidence. During this interview, E.M.-1 disclosed that she told petitioner about the step-father's sexual abuse shortly after the abuse began, approximately one year earlier. E.M.-1 further disclosed that petitioner confronted the step-father, at which time he stated, "I only did it because she liked it." Two police interviews with the step-father were also admitted into evidence. During one interview, the step-father admitted to certain sexual contact with E.M.-1, including touching her breasts and vagina on multiple occasions. In the step-father's second interview, he admitted that "I told my wife about all this stuff." According to the respondents, following E.M.-1's disclosure to petitioner and petitioner's confrontation with the step-father, petitioner took no action to protect her children who resided in the home.

On September 13, 2017, the circuit court completed the adjudicatory hearing. A Child Protective Services ("CPS") worker testified regarding the protection plan that was implemented with the family following the allegations of sexual abuse. The CPS worker testified to the name-calling levied by petitioner against E.M.-1 and petitioner's discussion of the details of the case in front of the children, despite instructions to not do so. On cross-examination, the CPS worker explained that petitioner was extremely upset when the children were removed, but failed to follow the CPS worker's instructions to not upset the children. Petitioner testified that E.M.-1 never told her about the sexual abuse and explained that she first learned of the allegations of sexual abuse when the CPS worker came to the house to implement the protection plan. Petitioner denied blaming E.M.-1 and calling E.M.-1 a "bitch." She testified that she was actually referring to the CPS worker when she called someone a "bitch." However, she did maintain that E.M.-1 was a liar and that she was "unsure what to believe" when asked if she believed that E.M.-1 was sexually abused by the step-father. She further testified that she and the step-father were separated, but that they still maintained contact for various reasons and she had not taken any steps to divorce him. She further admitted that she read at least one of the step-father's statements to the police. However, when she was subsequently asked if she was aware of the statements that the step-father made, she responded, "I don't believe so, no." Petitioner claimed that if she had known about the sexual abuse of E.M.-1, she would have taken action by asking the step-father to leave the home and by speaking to E.M.-1's counselor.

In its September 18, 2017, adjudicatory order, the circuit court found that petitioner was told of the sexual abuse of E.M.-1 and did nothing to protect her child from further abuse. It further found that petitioner chose the step-father over her child, despite "being confronted with overwhelming admissions by [the step-father] during cross-examination." The circuit court further found that petitioner called E.M.-1 a "bitch, a liar, and stated that [E.M.-1] ruined their family and that [E.M.-1] would never be forgiven." The circuit court concluded that these statements were made in front of the other children, thereby subjecting them to emotional abuse. The circuit court further found that

[petitioner's] demeanor was evasive while testifying. When confronted with material that she did not want to address, [petitioner] would attempt to claim that she did not understand very simple questions. At other times when confronted with similar questions she would attempt to engage in a narrative answer unrelated to the question at hand refusing to answer the question before her. Additionally, [petitioner] took extraordinarily long pauses to formulate answers when confronted with areas that made her appear to be responsible for abusive or neglectful behavior. Evaluating the testimony of [petitioner], the [circuit court finds] that her testimony was not credible.

Next, the circuit court found that petitioner contradicted the step-father's statements to the police wherein he "advised that he had told [petitioner] about the incidents involving [E.M.-1] and that [petitioner] had even written down and told [the step-father] what to tell law enforcement when he returned for his second interview with the police during the criminal investigation." Lastly, the circuit court concluded that petitioner abused and neglected the children by failing to protect them after being advised of E.M.-1's disclosures.

On November 3, 2017, the circuit court held a dispositional hearing. Petitioner testified that she would fully comply with an improvement period, if granted one. She stated that, despite the fact that she had made no admissions involving the abuse and neglect of her children, she could "correct a lot of things in becoming a better parent. Anybody can become a better parent if given the opportunity." Petitioner presented a witness who testified that petitioner and the children share a bond and that petitioner was a "great mom." The dispositional hearing was continued. On November 15, 2017, petitioner filed a motion for a post-adjudicatory improvement period or, alternatively, post-termination visitation with her children if her parental rights were terminated.

On November 23, 2017, the circuit court concluded the dispositional hearing. The DHHR presented testimony from a visitation supervisor who opined that petitioner had a bond with N.M., but not with the younger children. N.M. stopped going to visits with petitioner in October of 2017. After this time, petitioner began giving I.M. and K.G. more attention at visits. Another visitation supervisor testified that the middle children appeared to be upset and withdrawn because they were not receiving as much attention from petitioner as the oldest and youngest children. In its dispositional order, the circuit court denied petitioner's motion for a post-adjudicatory improvement period due to her failure to prove by clear and convincing evidence that she would be likely to comply with the terms and conditions of an improvement period. The circuit court noted that petitioner "admitted no wrongdoing and continued to blame her daughter [E.M.-1] for these proceedings. [Petitioner] chose to side with [the step-father] when he was accused of sexually abusing her child." The circuit court found no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the best interests of the children. The circuit court granted petitioner post-termination visitation with N.M., but denied visitation with the remaining

children. Ultimately, the circuit court terminated petitioner's parental rights in its January 17, 2018, order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in adjudicating her as an abusing parent due to her failure to take action after being advised of the child's disclosures and subjecting the children to emotional abuse by comments made in front of the children because there was "evidence to the contrary." We have held that

> "W.Va.Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Additionally, West Virginia Code § 49-1-201 provides that an "abused child" is a child whose health or welfare was harmed by "[a] parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical

---

[3]According to respondents, K.G.'s father's parental rights were terminated. The parental rights of the father of I.M., E.M.-1, and E.M.-2 were also terminated. The permanency plan for I.M., E.M.-2, and K.G. is adoption by K.G.'s current foster parents. E.M.-1 is currently in a residential treatment facility to address her sexual abuse. After treatment in a step-down facility, the permanency plan for her is adoption with her siblings.

injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include . . . [s]exual abuse[.]"

We note that the "evidence to the contrary" petitioner is referring to was her own testimony, which the circuit court deemed not credible. Petitioner's argument is essentially a recitation of her testimony below, and she cites to no authority in support. We find her argument unpersuasive. We have held that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of facts." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)). Further, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). While petitioner argued below, and on appeal, that she was not presented with any "information, knowledge, or disclosures that any abuse had occurred prior to the filing of the [p]etition by her child or any of her children," her testimony was determined by the circuit court to be not credible and contradictory to other evidence presented. In fact, E.M.-1's CAC interview was admitted into evidence in which she explained that the step-father sexually abused her, she told petitioner about the abuse, and petitioner confronted the step-father about the abuse. Further, two police interviews with the step-father were admitted into evidence. In the second interview, the step-father admitted to touching E.M.-1 on her breasts and vagina on multiple occasions. Additionally, he stated that he "told [his] wife about all this stuff," referring to the sexual encounters with E.M.-1. Furthermore, while petitioner denied that she made comments such as calling E.M.-1 a "liar" or a "bitch," or saying that she "ruined the family," this denial contradicted the evidence presented by the DHHR at the adjudicatory hearing. Additionally, even after hearing evidence regarding the sexual abuse of E.M.-1, petitioner refused to believe that any abuse occurred. Based on the evidence presented below, the circuit court found clear and convincing evidence that the step-father sexually abused E.M.-1 and that petitioner failed to protect the children from further abuse. Therefore, we find no error in the circuit court's adjudication of petitioner as an abusing parent.

Next, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period because she testified that she would fully comply with the terms and conditions of an improvement period, if granted one. She argues that although no disclosures of sexual abuse were made to her, she still desired an opportunity to "better parent her children."

In order to obtain an improvement period, West Virginia Code § 49-4-610(2)(B) requires a parent to demonstrate, "by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Petitioner failed to present evidence necessary to meet this burden. Further, "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). We have also held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth

5

of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Throughout the proceedings, petitioner refused to take responsibility for her failure to protect her children and made no admissions regarding the abuse. Petitioner maintained that she did not believe that E.M.-1 was sexually abused, despite multiple sources of evidence to support the same. Additionally, petitioner placed blame on E.M.-1 and chose to support the step-father. Because she refused to acknowledge the issues that needed to be addressed in an improvement period, granting her such would have been futile and at the expense of more harm to the children. Therefore, we find no error in the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period.

Further, petitioner argues that the circuit court erred in terminating her parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" As discussed above, petitioner blamed E.M.-1 for the proceedings and supported the step-father, despite the sexual abuse allegations. Because petitioner refused to acknowledge the abuse and neglect issues and failed to take any responsibility for her role in the proceedings, the circuit court properly found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the children's best interests. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 17, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  June 15, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating

6